WILLIAM F. ARNOLD, Assignee, *vs.* CORNELIUS DELANO.

The owner of a large quantity of wood, which was lying in a pile on his own land, having sold a portion of the same, and measured off and marked the part sold, with an agreement that the purchaser might remove it within a year, gave the purchaser a bill of sale of the wood, and received from him his promissory note for the price payable in six months, before the expiration of which time the purchaser became insolvent: It was held, that the vendor might retain the wood so sold against the assignee in insolvency of the purchaser, until the price thereof was paid or tendered to him ; and that the right of the vendor in this respect was not varied by the giving of the note for the purchase money, so long as the note remained in the hands of the vendor not negotiated, but ready to be delivered to the promisor or his assignee, on the discharge of the lien; or by the giving up of the bill of sale by the purchaser to the vendor, at his request, after the insolvency of the former ; or by a sale of a portion of the wood by the vendor, after the expiration of the year within which it was to be removed by the purchaser.

THIS was an action of trover, brought by the plaintiff as the assignee of Arthur Sowerby, an insolvent debtor, and was submitted to the court of common pleas upon the following agreed statement of facts :

On the 30th of March, 1848, Sowerby and one Grant,

who were partners as silk manufacturers, in Northampton purchased of Delano, the defendant, sixty-five cords of wood, then piled with a much larger quantity on Delano's land. The wood sold was measured off at the time of the sale, but no otherwise separated from the residue, than by means of a stake put down to designate the extent of sixty-five cords.   The contract was made with Sowerby, and a bill of the wood was given him by Delano, as follows:

" Messrs. Sowerby & Grant.        Bo't of C. Delano.
" 1848, March 30th.        65 cords wood, . . . . .        $97·00
        " Received payment by note at 6 mos. at
                        " Northampton Bank.   C. DELANO."

At the time of making the contract, there was no formal taking possession or delivery of the wood, except as above stated, but the purchasers were to remove the same before the 1st of April, 1849.

On the 29th of June, 1848, Sowerby applied personally for the benefit of the insolvent law, and a warrant was accordingly issued to Ansel Wright, as messenger, on the same day.   Possession was taken of the property at the silk works, by the messenger, on the 30th of June, and a schedule of assets was furnished him by Sowerby on the same day.   On the schedule was the following entry, in the handwriting of the messenger:  " 65 cords of wood on C. Delano's land."   No formal possession was taken of the wood by the messenger ; nor was any entry made by him on the land where it was piled, which was distant, in fact, two miles or more from the silk works.   On the 15th of July, Sowerby furnished a schedule of creditors, on which was this entry :  " Cornelius Delano, Northampton.  Note.  Wood. No security.  $97."

On the evening of Saturday the 1st of July, Delano, having heard of the insolvent proceedings, gave the messenger notice that the wood had not been paid for, and that he claimed to hold it, until the price should be paid.   Delano also saw Sowerby the same evening, and requested him to give up the bill and take the note.   Sowerby took until the next Monday morning for consideration, and being then

applied to, gave up the bill to Delano, who thereupon cancelled the note. The first publication of notice of the insolvency did not take place until Monday afternoon.

On the 17th of June, 1848, Sowerby and Grant advertised a dissolution of partnership, and gave public notice that Sowerby was duly authorized to settle all accounts of the late firm. As a part of the terms of dissolution, Sowerby undertook to pay all the partnership debts, and Grant conveyed to him all his right and title in and to the partnership property; but this conveyance was not known to Delano. At the time of the dissolution, the partners, severally, as well as the partnership, were, in fact, deeply insolvent.

The plaintiff was appointed assignee of Sowerby in October, 1848; the first meeting of creditors having been continued on account of certain legal objections; and the assignment was then first made by the commissioner.

To the demand made by the assignee on Delano for the wood, Delano answered that he could have it whenever he paid for it; and Delano has always been willing to give up the wood upon payment of the price. Subsequent to the 1st of April, 1849, Delano sold a portion of the wood measured off; but there has always remained in the same lot more than sixty-five cords of similar quality, of which he has offered to give up that amount, upon payment of the price agreed upon.

Upon the foregoing statement of facts, the court of common pleas gave judgment for the plaintiff, whereupon the defendant appealed to this court.

The case was argued in writing, as follows, on the points considered by the court.

C. Delano, for the defendant.

1. The insolvency taking place before the vendee had removed the wood, the vendor could exercise the " right of retention " for the price. Blackb. on Sales, (Law Lib. ed.) 224, 225, 226, and cases there cited. The defendant has the superior equity, 2 Kent, (5th ed.) 542. The burden of proof is on the plaintiff to show an abandonment of the right. Blackb. ubi sup. In order to extinguish the vendor's right of

retention, as between vendor and vendee, or his assignee in insolvency, the actual possession must have been parted with by the vendor, and acquired by the vendee, or by some person especially authorized thereto. Blackb. 200. Neither the giving of a credit, nor the fact that the wood was measured off, affords any decisive evidence of that kind of delivery, which displaces the vendor's lien. The cases of stoppage *in transitu* are analogous. See *Ilsley* v. *Stubbs*, 9 Mass. 65 ; *Stubbs* v. *Lund*, 7 Mass. 453 ; *Coates* v. *Railton*, 6 B. & C. 422 ; *Jackson* v. *Nichol*, 5 Bing. N. C. 508 ; *Whitehead* v. *Anderson*, 9 M. & W. 518 ; Blackb. 216, 241. *A fortiori* in a case of retention. Blackb. 201, 324 ; *New* v. *Swain*, 1 Dans. & Ll. 193 ; *Dixon* v. *Yates*, 5 B. & Ad. 313 ; *Miles* v. *Gorton*, 2 Cr. & M. 504 ; *Townley* v. *Crump*, 4 Ad. & El. 58. In the last three cases, as here, there was no place of ultimate destination specified.

The giving up of the bill of sale by Sowerby, at the defendant's request, was merely to facilitate the exercise of the right set up, and was fully justified. And whether defendant called it rescinding the contract or not, cannot affect his rights. See *Naylor* v. *Dennie*, 8 Pick. 198 ; *Wentworth* v. *Outhwaite*, 10 M. & W. 436.

2. Sowerby's agreement to give up the contract, made before the first publication of notice, was good against his assignee. *Clarke* v. *Minot*, 4 Met. 346. He might renounce his right to property not yet come to his hands. *Atkin* v. *Barwick*, Stra. 165 ; *Salte* v. *Field*, 5 T. R. 211 ; *Richardson* v. *Goss*, 3 B. & P. 119.

*C. P. Huntington*, for the plaintiff.

1. The defendant could not exercise the right of stoppage. For in order to entitle him to that right, he must show the property to be either in the hands of some middle-man, as a carrier, or the like ; or in some intervening place for storage ; he must also show some intervening time, and some specific ulterior destination of the property ; neither of which appears in this case. The vendee had the immediate right of possession. The agreement to let the wood remain on the land for a year, must be taken to have been a part of the

consideration of the sale, and is equivalent to the vendor's receiving rent for the storage, which defeats the right of stoppage. *Hurry* v. *Mangles,* 1 Camp. 452. There was here a complete delivery in law and in fact, sufficient to defeat any lien even in case of the vendee's insolvency before actual delivery. *Snee* v. *Prescott,* 1 Atk. 245; *Chapman* v. *Searle,* 3 Pick. 38, 42, 43, 44, 45; *Parks* v. *Hall,* 2 Pick. 206, 212, and cases cited; *Riddle* v. *Varnum,* 20 Pick. 280, 284, 285; *Ilsley* v. *Stubbs,* 9 Mass. 65, 71; *Stubbs* v. *Lund,* 7 Mass. 453, 457; 2 Kent, 545, 546; *Stoveld* v. *Hughes,* 14 East, 308, 315; *Lackington* v. *Atherton,* 7 Man. & G. 360; *Gardner* v. *Howland,* 2 Pick. 599, 602, 603; *Leeds* v. *Wright,* 3 B. & P. 320; *Scott* v. *Petit,* 3 B. & P. 469; *Harman* v. *Anderson,* 2 Camp. 243; Long on Sales, 331; *Lickbarrow* v. *Mason,* 1 Smith's L. C. (540) (551) note; 3 Steph. N. P. 2593, 2598, and cases; Chit. Con. (ed. 1839), 343; *Coates* v. *Railton,* 6 B. & C. 422; *S. C.* 9 D. & R. 593; *Valpy* v. *Gibson,* 4 M. G. & S. 837.

2. If the defendant had the right of stoppage, he did not exercise it, but attempted to effect a resale to himself. *Rowley* v. *Bigelow,* 12 Pick. 307; 1 Smith's L. C. 540, note. But Sowerby had not the power to resell; a warrant in insolvency had issued, and the defendant knew it. The defendant having attempted a resale and a preference, and having removed part of the wood and sold it, how could he convert those illegal acts into the enforcement of a different right, — that of mere detention?

SHAW, C. J. This is an action of trover, to recover the value of sixty-five cords of wood, brought by the plaintiff, as the assignee of Arthur Sowerby, an insolvent debtor. It is submitted to the court upon an agreed statement of facts, which being clearly stated, it is not necessary to recapitulate.

On these facts, the plaintiff contends, that there was a complete sale and purchase of the wood, by which the property became vested in Sowerby and Grant; that by the dissolution of partnership between them in June, 1848, and the transfer by Grant to Sowerby of all his right, title and interest in the partnership property, Sowerby stipulating to pay all the partnership debts, this property became vested in

Sowerby; and that by his subsequent insolvency, the proceedings under it, and the assignment to the plaintiff, the same title to the property became vested in him.

On the other hand, the defendant insists, that though the wood was sold and measured off, with a license to the purchasers to come on to his land, and take it away as they wanted it, at any time within one year; and though a credit of six months was given for the purchase money, and a note was given to the plaintiff payable at the Northampton Bank in six months; yet as the wood remained as it originally lay on his premises, it was in his actual possession; and, as the purchasers became insolvent, and legal proceedings in insolvency were instituted against them, before the price of the wood had been paid, he had a right to detain the wood until payment or its equivalent.

The cause has been extremely well argued on both sides; and many authorities have been cited. But without going over the whole ground, it is proposed to state only what we understand to be the rules of law bearing upon the subject, and to apply them to the facts of the case as they appear in the agreed statement.

There is manifestly a marked distinction between those acts, which, as between the vendor and vendee upon a contract of sale, go to make a constructive delivery and to vest the property in the vendee, and that actual delivery by the vendor to the vendee, which puts an end to the right of the vendor to hold the goods as security for the price.

When goods are sold, and there is no stipulation for credit or time allowed for payment, the vendor has by the common law a lien for the price; in other words, he is not bound actually to part with the possession of the goods, without being paid for them. The term *lien* imports, that by the contract of sale, and a formal, symbolical or constructive delivery, the property has vested in the vendee; because no man can have a lien on his own goods. The very definition of a lien is, a right to hold goods, the property of another, in security for some debt, duty or other obligation. If the holder is the owner, the right to retain is

a right incident to the right of property; if he have had a lien, it is merged in the general property.

A lien for the price is incident to the contract of sale, when there is no stipulation therein to the contrary; because a man is not required to part with his goods, until he is paid for them. But *conventio legem vincit;* and when a credit is given by agreement, the vendee has a right to the custody and actual possession, on a promise to pay at a future time. He may then take the goods away, and into his own actual possession; and if he does so, the lien of the vendor is gone, it being a right incident to the possession.

But the law, in holding that a vendor, who has thus given credit for goods, waives his lien for the price, does so on one implied condition, which is, that the vendee shall keep his credit good. If, therefore, before payment, the vendee become bankrupt or insolvent, and the vendor still retains the custody of the goods, or any part of them; or if the goods are in the hands of a carrier, or middle-man, on their way to the vendee, and have not yet got into his actual possession, and the vendor, before they do so, can regain his actual possession, by a stoppage *in transitu;* then his lien is restored, and he may hold the goods as security for the price.

The principle we take to be well settled, but the difficulty which arises in practice, — one which has given rise to so many cases, — lies in determining what is such an actual change of possession from the vendor to the vendee, as shall be deemed to put an end to the vendor's lien. Some cases seem to be clear, and to illustrate the rule. If the goods are delivered to the vendee's own servant, agent, wagoner, or ship master, that is in law a delivery to the vendee himself. So if goods are stored in a common warehouse, as the dock warehouses at the London docks, and entered in the books as the property of A. B., and deliverable to him, and a dock warrant issued, and afterwards, upon the proper order of A. B. on the warrant, the whole or a part are transferred to C. D., and entered in like manner in his name, this is an actual change of custody, control and possession, though the goods are not moved from their position. So, if the seller

sustain different characters, as if a person, who is a livery stable keeper, having a horse to sell, makes a sale to C. D., and then transfers the horse to his livery stable, to be kept for C. D. at a stipulated weekly hire, this may be regarded as an actual change of custody and possession.

But by far the most common case which occurs, is where goods are ordered by letter, on credit, to be sent from one country to another, or from one part of the same country to another, and are accordingly forwarded by a common carrier. There, as the carrier is not the servant of the vendee, the goods, though they have left the actual possession of the vendor, if they have not reached the actual custody of the vendee, or the ultimate place of destination ordered by him, may be stopped *in transitu* by the vendor; and if he can thus stop them, he regains his lien.

Now to apply these rules to the present case : it appears to us very clear, that there was a good sale and delivery of the wood to Grant and Sowerby. The wood was measured and marked off, so that the very sticks composing the sixty-five cords could be identified. And the reason, why marking, measuring, weighing, &c., is necessary, is, that the particular goods may be identified. If ten barrels of oil are sold, lying in a tank of thirty barrels, the buyer can identify no part of it as his, until it is measured. So, if fifty bales of cotton are sold out of one hundred, no particular bales are identified until separation. But, if they are capable of being identified, and by the contract of sale are identified, that is sufficient, and the property passes ; as, if in the last case, there are one hundred bales of cotton, numbered from one to one hundred, and the contract is for the fifty odd numbers, or the fifty even numbers, or any other specified fifty numbers, the bales sold are identified though not separated. In the present case, the wood was marked off and identified, and the vendees had a license for one year to come on to the vendor's land and to take it away. This was a complete sale and a constructive delivery, so as to vest the property in Grant and Sowerby ; and, on their dissolution and transfer, it vested in Sowerby, and by the assignment in his assignee. Then, the

question is, whether the defendant had, undei the circum-stances, a lien for the price, and we think he had.

The purchasers had a license to go on to the defendant's land, and take the wood; whether this license was revoca-ble or not, it is not necessary to consider, as it was not in fact revoked. But the vendees did not enter and take the wood; it remained on the vendor's land, and in his posses-sion, in the same manner as before and at the time of the sale. The vendor acted in no new capacity; he was to receive nothing for keeping; he was precisely in the con-dition of a vendor, who had not parted with the possession and custody of the goods sold. And this was the state of things, when Sowerby went into insolvency; upon which event, we think, the vendor was remitted to his right to keep possession of the wood as security for the price. Such a vendor in possession is regarded as having a higher equity to retain for the price, than the assignee of a debtor, who has not paid for the property, has to claim it for the general creditors.

Sometimes a question may arise as to what constitutes an insolvency, and whether a mere stoppage of payment, and failure, in the popular sense, is sufficient. In this case, there is no doubt, because there was an insolvency declared by law, and a sequestration of all the vendee's property, under which this wood is claimed by the plaintiff.

If it might be supposed, that the giving of a note in this case was a payment, which would vary the case from that of a simple promise to pay for the wood, we think the answer is, that a promissory note, even if in form negotiable, whilst it remains in the hands of the vendor and not nego-tiated, but ready to be delivered up on the discharge of the lien, is regarded as the evidence in writing of a promise to pay for the goods purchased, and does not vary the rights of the parties. *Thurston* v. *Blanchard*, 22 Picl . 18.

The fact, that after the proceedings in insolvency com-menced, and became known to the defendant, he applied to Sowerby and got up the bill of sale, cannot of itself, we think, avail the defendant. The insolvent could not, in that

4 *

state, vacate the sale, or reconvey the property; and if the wood was worth more than the lien of the defendant upon it, we think that the assignee, on paying the defendant the price, was entitled to the wood for the benefit of the general creditors; and this was a right which the insolvent could not defeat.

A fact was stated, on the part of the plaintiff, as of some weight, namely, that after the expiration of one year from the sale, the defendant sold a part of the wood. Whether, at that time, he had an absolute right to sell the wood or not, it seems to us, that such sale can have no effect on this claim. The plaintiff, if he can recover at all, must recover on the strength of his own title. He must prove a conversion. The action of trover admits that the defendant obtained the possession rightfully; then, if he had a lien and a right to hold until the price was paid, his refusal to deliver the wood on demand to the plaintiff, (such demand not being accompanied with a tender of the price,) was no evidence of conversion; and, until such tender made, the plaintiff has no ground of complaint.

*Judgment for the defendant.*